WILLIAM MC GOWAN, PLAINTIFF-APPELLANT, v. BOROUGH OF EATONTOWN, STATE OF NEW JERSEY, MOTHER HUBBARD RESTAURANT AND NEW JERSEY HIGHWAY AUTHORITY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 25, 1977—Decided July 13, 1977.

442

Before Judges BISCHOFF, MORGAN and KING.

*Mr. Philip G. Auerbach* argued the cause for appellant (*Messrs. Auerbach, Rudnick* and *Waldman,* attorneys).

*Mr. Richard A. Amdur* argued the cause for respondent Borough of Eatontown.

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for respondent State of New Jersey (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney, *Mr. Steven A. Tasher,* Deputy Attorney General, on the brief).

KING, J. S. C., Temporarily Assigned. Plaintiff appeals from a grant of summary judgment below in favor of defendants Borough of Eatontown and State of New Jersey. This personal injury claim was brought by the driver of a motor vehicle involved in a one-car accident occurring on State Highway 35 on February 4, 1973, in the vicinity of the driveway of defendant Mother Hubbard Restaurant in Monmouth County. Defendants State and borough prevailed below by summary judgment on an assertion of statutory immunity under our Tort Claims Act, *N. J. S. A.* 59:1-1 *et seq.* The sole question on this appeal is the propriety of the trial judge's ruling on the immunity issue.

The complaint alleged negligent construction of a driveway on the roadside property of the Mother Hubbard Restaurant causing a runoff of large quantities of water onto the adjoining state highway. Plaintiff alleged that the water accumulated on the highway because of improper drainage and formed into ice, causing him to lose control of his vehicle and crash, resulting in his personal injuries. He charged the State with negligently maintaining the highway and improperly granting approval for the construction of the res-

taurant driveway. The borough was charged with negligently permitting the restaurant to construct the driveway with improper drainage facilities. Defendant Mother Hubbard Restaurant impleaded several contractors who built the driveway, and the architect who designed the site. Contributions by defendant Mother Hubbard Restaurant and these third-party defendants who participated in the design and construction of the driveway generated a package of $10,000, which plaintiff accepted in settlement and discharge of these parties' liability. Only the State and the borough remain in the litigation and the validity of their assertion of immunity in this factual situation is the problem posed on this appeal.

Plaintiff was driving south on State Highway 35 at about 7 A.M. on Sunday, February 4, 1973. He has no personal recollection of the accident. According to the statement of a witness given to the investigating police officer, plaintiff's vehicle "hit a slick spot and went sideways." The police investigation indicated that plaintiff's car flipped over several times. Investigating officer Pierce was thoroughly deposed and his testimony is in effect the record below. Pierce described an isolated ice patch covering the right-hand, southbound lane of the four-lane highway about 200 feet from the driveway and entrance to the Mother Hubbard Restaurant. The totality of the investigation was capable of the fair inference that plaintiff lost control of his car when negotiating this ice patch. Pierce had noticed a similar icy condition on other days before the accident. The "area of the driveway of the Mother Hubbard" was the source of the water in the officer's opinion. The borough police had alerted the State to the problem when icy accumulations had formed on other dates before this accident. Officer Pierce stated:

On various occasions this particular area was considered hazardous by us and we would call the State and request immediate sanding and/or salting of the area, and requests had been made by my part variably [sic] and I don't know as far as whether it was a written request, but I know telephonically there had been some communica-

tion as far as doing something about eliminating this problem because it was recurrent.

At other points in his testimony Pierce stated he saw the ice "quite a few times" and on "numerous occasions." Pierce indicated: "My superiors were aware of the icing problem and had also at various times brought this to the state's attention." He further stated his superiors: "are doing everything they could and they were trying to get somebody to do something about it through the State." The patch of ice could form "any time you have wet conditions." Pierce described the source of the condition in detail as follows:

The water drained from the area of Mother Hubbard's driveway would proceed along the curb for a number of feet, along the curb and then it would come out into the road and eddy, like an eddy. I'm trying to explain it would kind of bubble out in the roadway and for a ways and then go back to the curb. Now, if the conditions were cold enough, this particular area out of the road would then go into a freezing type of condition. Otherwise it would be a wet condition.

Pierce had passed this accident location while on patrol during the night shift hours before the accident. He could not recall the time when he had last passed the area that night. He could not remember whether he noticed the condition within the hours just before the accident and whether he called the condition in to his dispatcher, because "it got to be a routine type of situation, especially during the winter months, and I cannot say I definitely didn't see it or I definitely did." From a "layman's point of view" the area where the water accumulated and the ice formed on the roadway "appeared to be a slight depression." No construction expert's testimony or reports relevant to the construction of the highway were considered on the summary judgment application.

This case involves the interplay of several sections of the Tort Claims Act and raises a novel question concerning its construction and application to particular fact situations.

446

We conclude the matter is not appropriate for summary judgment on the present record. The language of the Supreme Court in *Beadling v. Sirotta,* 39 *N. J.* 34 (1962) is appropriate:

> The legal issues which the parties seek to present carry important implications and they should not be determined in a vacuum or in academic fashion; the preferable procedure is to permit the matter to be tried and determined in regular course. [at 35]

See also, *Jackson v. Muhlenberg Hospital,* 53 *N. J.* 138 (1969). We do not mean to suggest that a plenary trial will result in a jury question or factual issue for the trier of fact on any or all of the points discussed herein. We only indicate the necessity in this case of a judge making the legal determinations on which the parties' rights hinge on a full and complete record. If, on a plenary hearing, the judge finds no factual issue present or finds a moving party is entitled to judgment as a matter of law, then judgment should be entered accordingly.

■ According to *N. J. S. A.* 59:1-2 and *N. J. S. A.* 59:2-1 public entities are only liable for negligence within the limitations of the statute; there is no liability except as provided by the act. See *Burg v. State,* 147 *N. J. Super.* 316 (App. Div. 1977); *English v. Newark Housing Auth.,* 138 *N. J. Super.* 425, 428 (App. Div. 1976). Plaintiff's claim against the State involves liability relating to conditions of public property, the category of claims covered by *N. J. S. A.* 59:4-1 to *N. J. S. A.* 59:4-9. The state does not dispute on this appeal the applicability of the act to a public roadway. "Public property" means real or personal property owned or controlled by the public entity. *N. J. S. A.* 59:4-1(c). For a more complete discussion see *Whaley v. Hudson Cty.,* 146 *N. J. Super.* 76 (Law Div. 1976).

■ Initially we point out that plaintiff does not claim negligent plan or design of the section of the highway where the accident occurred either by way of original construction or improvements. Specific immunity as conferred by the

statute would defeat such a claim. *N. J. S. A.* 59:4–6; *Rodgers v. Passaic Housing Auth.,* 139 *N. J. Super.* 569 (App. Div. 1976). Nor does plaintiff claim responsibility for failure to provide ordinary traffic signals, signs, markings or other similar devices. Again, such a claim would be defeated by a specific section of the act. *N. J. S. A.* 59:4–5; *Aebi v. Monmouth Cty. Highway Dept.,* 148 *N. J. Super.* 430 (App. Div. 1977). The public entities here have also raised the specific immunity conferred by *N. J. S. A.* 59: 4–7, operative "for an injury caused solely by the effect on the use of streets and highways of weather conditions." Plaintiff here contends that the icy condition of the road was not the *sole* cause but only a factor or contributing cause existing in combination with other causes which resulted in the accident. If the weather combined with another cause or other causes actionable under the Tort Claims Act, under the principles to be discussed *infra,* then this specifically conferred climatological immunity would not operate as a bar because of the express statutory use of the word "solely."

We must then consider whether plaintiff comes within the ambit of the conditions for liability generally as described by *N. J. S. A.* 59:4–2 which states:

A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

We find that plaintiff's proofs, insofar as they were demonstrated on the motion for summary judgment, could justify a jury in inferring that the state highway was in a dangerous condition, that was a proximate cause of the accident, and that the risk of injury was reasonably foreseeable. The testimony of the borough police officer, Pierce, if believed, provides *prima facie* proof that the State had actual notice of the general tendency of the roadway to form an icy patch under certain conditions on a recurrent basis sufficiently in advance of this accident to permit the state to have taken adequate protective measures.

Pierce's testimony discloses that the State when actually notified of the existence of the icy condition customarily chose to salt or sand the allegedly dangerous area. There is no proof of actual notice to the State of the existence of the icy condition at the time of the accident. Despite the absence of actual notice on the day of the accident, the State was certainly on constructive notice within the meaning of *N. J. S. A.* 59:4–3 (b), that the condition would re-occur under predictable circumstances. The inquiry at trial should then focus on whether the State's failure to salt and sand when having constructive notice from the local police of the formation of the ice in cold weather is "palpably unreasonable" within the meaning of *N. J. S. A.* 59:4–2.

██ Any tort responsibility of the State under *N. J. S. A.* 59:4–2 will of course, be subject to the general immunity conferred by *N. J. S. A.* 59:2–3 (d) covering "Discretionary Activities" which states:

d. A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel *unless a court concludes that the determination of the public entity was palpably unreasonable.* Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions. [Emphasis supplied]

Such a determination should be reached within the framework and guidance of the Supreme Court's expressions in *Bergen v. Koppenal,* 52 *N. J.* 478 (1968), and *Amelchenko v. Freehold,* 42 *N. J.* 541 (1964). The trial judge had no evidence of any kind to weigh in considering whether the State acted in a "palpably unreasonable" fashion in its attempted resolution of the alleged dangerous condition in light of any competing demands on existing resources. If the State were to demonstrate that the sanding and salting done when notice was given periodically of the icy condition was a conscious decision, resulting from competing demands and utilizing existing resources, immunity would obtain under *N. J. S. A.* 59:2–3(d), unless the court were to conclude that the determination was "palpably unreasonable."

Plaintiff suggested at oral argument that the highway, although properly designed, may have been negligently constructed, so as to create a puddling condition subject to freezing in cold weather, and that such negligent construction provided an adequate basis for the State's liability under *N. J. S. A.* 59:4–2 and specifically subsection (b) thereof, subject to the restrictions of *N. J. S. A.* 59:2–3(d). As we indicated heretofore, if the alleged dangerous condition on the roadway is a result of the plan or design of the roadway so as to be covered by *N. J. S. A.* 59:4–6, the State is immune, as it would be if the condition was solely the result of the weather under *N. J. S. A.* 59:4–7. Plaintiff however is entitled to attempt to show the condition occurred at least in part from other non-immunized causes, such as negligent construction in contrast to improper design, or solely climatological conditions, in his effort to establish liability under *N. J. S. A.* 59:4–2.

■ Plaintiff's complaint also suggests the liability of the public entities premised on improper approval of the construction of the driveway of the Mother Hubbard Restaurant. Under the Tort Claims Act a public entity is immunized from liability for the issuance of any permit, license, certificate, approval, order or similar authorization where the

public entity is authorized by law to make such a determination *N. J. S. A.* 59:2–5. Immunity would be a defense to any such claim.

■■ *N. J. S. A.* 59:4–4 may have possible pertinence on remand and deserves discussion. This section of the act permits liability subject to *N. J. S. A.* 59:4–2 for failure to provide "emergency" devices if they are necessary to warn of a dangerous condition imperiling the safe movement of traffic not apparent to, or capable of anticipation by a person using due care. The legislative comment to the statute, derived from the Report of the Attorney General's Task Force on Sovereign Immunity (1972), suggests a duty on the public entity under this section where the existing condition constitutes a "trap" to a person otherwise using due care. The recurrent nature of this condition does not preclude application of the liability permitted by *N. J. S. A.* 59:4–4, assuming the requirements of that section and *N. J. S. A.* 59:2–3, if raised, are met in full. Nor would recovery for failure to warn of such a known "trap" be barred by the immunity granted under *N. J. S. A.* 59:4–5 relating to failure to provide "ordinary" traffic devices. We do not deem the Legislature to have considered the public entitled to any less warning where the emergency recurs predictably and periodically and the public entity is on notice of this likelihood, than in a situation where the emergency consists of a single passing episode. Failure to provide ordinary traffic devices such as stop signs, yield signs, and traffic signals, was never a basis for imposing liability before the passage of the Tort Claims Act. *Hoy v. Capelli,* 48 *N. J.* 81 (1966). *N. J. S. A.* 59:4–5 intended to preserve prior law as exemplified by the *Hoy* case but was never intended to relieve the public entity of liability for a negligent failure to respond reasonably to a dangerous emergency situation. *Bergen v. Koppenal, supra.* See legislative comments from the Attorney General's Task Force on Sovereign Immunity (1972) appended to *N. J. S. A.* 59:4–4 and *N. J. S. A.* 59:4–5. If

an emergency is predictably recurrent, a public entity is not immunized when the condition is simply ignored, but may be held liable if the requirements of *N. J. S. A.* 59:4-2 and *N. J. S. A.* 59:4-4 are met.

Although the above discussion was directed essentially to the State's alleged responsibility, since a state highway is involved, the reversal and remand here will be as to both the State and the borough. The principles governing potential liability and immunity discussed *supra* are equally applicable to the borough to the extent the proofs establish, if they indeed do, that the borough is a public entity in control of the pertinent property under *N. J. S. A.* 59:4-1 (c). Any theory of liability or immunity on the part of either the State or borough not specifically discussed herein should be available to the parties and not foreclosed on remand, if timely raised in accordance with our rules of practice. Reversed and remanded for further proceedings consistent with the expressions in this opinion.

Reversed and remanded.